**BERONJI v STATE**

Ohio Appeals, 7th Dist, Mahoning Co

Decided Sept 30, 1932

Kaufman & Neiman, Youngstown, for plaintiff in error.

R. L. Thomas, Prosecuting Attorney, Youngstown, for defendant in error.

ROBERTS, J.

It is pertinent to read §13449-5 GC, of somewhat recent enactment, which defines the powers and limitations and duties of the Court of Appeals in reviewing this case:

"No motion for a new trial shall be granted or verdict set aside, nor shall any judgment of conviction be reversed in any court in case of any inaccuracy or imperfection in the indictment, information or warrant, provided that the charge be sufficient to fairly and reasonably inform the accused of the nature and cause of the accusation against him, nor for any variance between the allegations and the proof thereof, unless the accused is misled or prejudiced thereby, nor for the admission or rejection of any evidence offered against or for the accused, unless it affirmatively appears in the record that the accused was or may have been prejudiced thereby; nor for any misdirection of the jury unless the accused was or may have been prejudiced thereby, nor for any other cause whatsoever, unless it shall affirmatively appear from the record that the accused was prejudiced thereby or was prevented from having a fair trial."

The section of the General Code under which this defendant below, plaintiff in error, was indicted and convicted, reads as follows:

"Sec 13008, GC. Whoever, being the father, or when charged by law with the maintenance thereof, the mother, of a legitimate or illegitimate child under sixteen years of age, or the husband of a pregnant woman, living in the state, fails, neglects or refuses to provide such child or such woman with the necessary or proper home, care, food and clothing, shall be imprisoned in a jail or workhouse at hard labor not less than six months nor more than one year, or in the penitentiary not less than one year nor more than three years."

So far as this section is concerned, it imposes the duty upon the state to prove all of the essential elements of the crime charged, beyond a reasonable doubt.

Then follows §13008-1, GC, which reads:

"Upon trial for any offense defined in the foregoing section, the defendant shall be acquitted if it appear that he was, because of lack of property or earnings, or the inability to secure employment, or the physical incapacity to perform labor, unable to provide such child or such woman with necessary or proper home, care, food and clothing."

There is no contention in this case but that guilt having been determined as far as the section first read is concerned, that then to secure acquittal or a right to such, the burden rests upon the defendant by a preponderance of the evidence to establish this affirmative defense of an inability to properly support the child by reason of any of the causes enumerated in that section. Reference will hereinafter be made to that proposition.

But little time will be spent in discussing the first alleged ground of error; that is, that the verdict was against the manifest weight of the evidence. It is proper, however, that some statement should be made for an understanding of the case. This man and woman had been married some thirteen years. Three children had been born of this marriage, whose names have been read from the indictment. This action was instituted by the wife, charging her husband with failure and neglect regarding the support and care of these children. These people were foreign people. Perhaps their habits and way of living may be somewhat different from other people, and there is some conflict in the testimony in regard to what the facts are. It was contended by the wife in her testimony, and corroborated by other testimony to some extent, that the conduct of the husband was substantially this, that he lived in the house about the same as other boarders, and that he paid about as much as a boarder not of the family would ordinarily be expected to pay. Perhaps he sometimes furnished groceries and other provisions, and it is claimed that in so doing he cooked his own meals from the food which he bought, sat alone at the table in consuming that food and then put it away for another meal and that the family was not allowed to participate therein. There is some dispute about this proposition. Some contention was made by the defendant that his earning capacity was very limited, that during the period of substantially three months of which he was charged with neglecting these children, that he was able to earn only, as is recalled, about eight dollars per month. This is somewhat inconsistent, however, with other testimony in the case, where he testifies, in effect, that he contributed to the support of this family some thirty-five

to forty dollars per month. Just how he was able to do this on the meager earnings which he had before testified to is not apparent. Perhaps he was able to get credit. His explanation, however, is that he was able to do this because some one paid him a loan of some three hundred dollars. There was another proposition which entered into the case and that was that the wife had accumulated by her frugality and industry some money which was deposited in a bank in this city. The wife gave the husband a bank book and instructed him to take it to the bank and have entered thereon interest which had accumulated. He drew the money out. The only information furnished in the record as to what became of 'this is his statement that he went to Masury, over near the Pennsylvania line, and visited a fortune teller, got intoxicated and in some way lost the money. This threw an additional burden upon the wife because of losing the interest which she had formerly been able to receive from this deposit in the bank. So far as the weight of the evidence is concerned, and weighing it and construing it in the light of the section of the Code which has been read, this court is not able to say that the verdict is against the weight of the evidence so far as the failure to provide or support is concerned.

The second allegation of error will now be taken up, and that is error in the court's charge prejudicial to the rights of the defendant and which prevented a fair trial. The instruction of the court is of considerable length and perhaps might have been better if it had been more brief and terse. Danger is always encountered in unnecessarily extending instructions to juries. A tendency thereby to some extent develops to confuse. The court after having instructed the jury upon the duty devolving upon the state to prove that this defendant had neglected and failed to provide for these children in the manner charged, then proceeds with a discussion and an instruction upon the issues developing from the second of these sections, which provides for an affirmative defense, and it is assumed that the law is substantially the same in this regard as those other generally recognized affirmative defenses of self-defense, duress and insanity, where it has been previously established that the act charged was committed and then excuse is sought to be shown by showing the existence of these things which constitute an affirmative defense and upon which to sustain the burden rests upon the defendant.

This is what the court said in this connection:

"Now, members of the jury, it is for you to say whether or not he has established this defense or not, because the burden of proof is upon him to show that he is unable, by reason of the matters as set up in the statute to furnish and prepare food and necessary clothing, or shelter, or care as are necessary for the proper support and maintenance of his children."

Now follows the particular statement to be considered:

"He must establish this defense by the greater weight of the evidence, that is, the evidence that outweighs and has a greater weight than evidence that would be offered to support the other side of this question."

It may be now stated that Judge Pollock is of the opinion that the use of this language, if I express his sentiment correctly, that he must establish this defense, that that imposes too heavy a burden. However, the majority of the court is of the opinion that this statement by the court below in instructing the jury is not reversibly prejudicial. The use of the word "establish" is not approved by any of the members of this court, and the Supreme Court has repeatedly criticised the use of such words or that the evidence must fairby preponderate or that it must be satisfactory. If the court had said that he must establish this defense, doubt is not entertained but that that would have been prejudicial, but that is qualified by these words "by the greater weight of the evidence." He must establish it by the greater weight of the evidence. That phrase is correct. Then the greater weight of the evidence is defined in this language: "That is, the evidence that outweighs and has a greater weight than the evidence that would be offered to support the other side of this question."

Now, it seems to the majority of the court that the word "established" as intended to be understood by the court was simply that it appear by the greater weight of the evidence, which means the preponderance of the evidence, and if that be true, it was not erroneous. Perhaps the last time that the Supreme Court has spoken upon this subject is the case of **The State of Ohio v Hauser, reported in 101 Oh St, 404.** This was a case in which the trial court gave two rules which were antagonistic, one of

which in any event was wrong, and the court considered the proposition that if the other was not erroneous the case should still be reversed, for the reason that it could not be assumed that the jury did not consider and rely upon the other, which was not, but that part of the syllabus which is pertinent to this question under consideration is the third paragraph, which reads as follows:

"In a criminal prosecution wherein the defense of insanity—"

and it has been before suggested that insanity is one of those affirmative defenses,—

"is interposed by defendant, a charge to the jury that 'proof in support of insanity must be affirmatively established by positive or circumstantial evidence, which must satisfy you that he was not sane', is erroneous;—"

and presumably no one would contend that it was not so,—

"and such instruction is not qualified or modified by a further charge that 'Before you can find defendant was insane, you must be satisfied by a preponderance or greater weight of the evidence.' Such latter charge presents to the jury an independent or different rule as to the quantum of evidence necessary to establish such defense, and does not cure the erroneous charge theretofore given."

It would seem from this syllabus, which is the law of the case, and the court considering an erroneous charge which is decided to be the first one, and which is not so, did not disapprove of the language used in the section which said that you must be satisfied by a preponderance or greater weight of the evidence. Again we find the word "satisfy," which might otherwise be objectionable, qualified or defined to mean the greater weight of the evidence, which is the proper burden. The majority of the court thinks that prejudicial error did not occur in this respect.

The other alleged error is misconduct on the part of the prosecuting attorney, and that is based upon a stipulation which was made a part of the record, evidently after the charge of the court to the jury. It is found immediately preceding the charge to the jury, and it reads as follows:

"Whereupon counsel proceeded to argue their respective sides to the jury, upon completion of which argument it was stipulated by counsel for the State and counsel for the defendant, that counsel for the State in his argument to the jury said to the jury that Ford Agey, attorney for the Humane Society, testified to the fact that Judge Baldwin had found the defendant guilty of neglecting to provide for these minor children, and had made an order that he pay $60.00 a month alimony for the support of these children, to which the defendant then and there duly excepted."

It seems apparent from what is said in this stipulation that this was agreed upon after the completion of the argument wherein the statement is alleged to have been made. It is not apparent that when this statement was made in the argument of counsel for the State that any objection was made thereto, that the court was called on to rule upon the propriety of this statement, or that it was called to the attention or observed by the court. While we do not say or hold that it is an imperative duty upon the part of counsel to then and there object or to call attention of the court to what has been said and attempt to secure a ruling, nevertheless it would be desirable in situations of this kind, and some authorities are to that effect, that the attention of the court be called to the matter which is subject to objection, although in this case not made. The trial incurred considerable expense and occupied a considerable period of time, and if there has been some dereliction from duty or rights in argument, it would be proper if it could be done that the attention of the court be called to it. Counsel may inadvertently have said something which was not justified by the testimony of the facts, and an opportunity for a retraction which perhaps would take the sting and effect out of it so far as the jury was concerned, or the court might have an opportunity to admonish the jury to wholly disregard such improper statement. So this proposition comes to this court somewhat lessened at least in effect and in the weight which should be given to it, because we do not know when it first came to the knowledge of counsel, and these opportunities for correction or admonition by the court were not granted. Counsel very frankly agreed upon what was said. It will be recalled that this said that "Judge Baldwin had found the defendant guilty of neglecting to provide for these minor children." We find on page five of the record Mr. Agey's testimony in response to the question:

"Q. What do these records show?

A. On the 5th day of November, 1931, he was ordered to pay $60.00 a month in Judge Baldwin's court, first payment on the 5th of November, 1931."

Now, the testimony of the witness is that he was ordered to make these payments. How deeply the jury would consider that matter in determining what weight should be given to it we do not know. It might be reasonably within the conception of jurors that a court would not order a father and a husband to make these payments until he had been brought into court in another proceeding or perhaps in some other way. In any event, it would indicate he was making these under the power and compulsion of the court.

Turning now to page 19 of the record, where the wife was under cross-examination by counsel for the defendant below, this question was asked:

"Q. Now, going back to the month of September of 1931, and during the period in which the defendant is charged with the non-support of your children, I will ask you whether or not you had him arrested under a civil action?

A. He was arrested because he didn't pay for the keep of the children."

Then follows more in that connection. Now, it had only been developed on page 5 of the record by the representative of the State that the defendant had been ordered to pay sixty dollars a month for the support of the children. In cross-examination the party complaining now through his counsel brought the matter closer to the alleged wrongful statement in argument by inquiring if she had had him arrested, which didn't previously appear in Mr. Agey's statement, and she says that she did. Perhaps it is somewhat of a question whether there is very much difference between the statement elicited by the complaining party, the wife had the husband arrested, and that Judge Baldwin had found him guilty of neglecting to provide for these minor children, and it is apparent and not disputed otherwise from the record that he was ordered to pay for the support of these children.

We do not think that there is a very important distinction; in any event, not a reversible distinction between what Mr. Agey testified, and especially upon what the attorney on the other side asked and the answer received from the complaining wife in this case.

Having given careful consideration to the matters complained of as prejudicial error and determining the power of this court as defined by the statute which has been read, we fail to find that there was reversible error in this case and the judgment of the Court of Common Pleas is affirmed.

FARR and POLLOCK, JJ, concur in the judgment.